IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **J&R MULTIFAMILY GROUP, LTD.,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:18-cv-375 |
| | § | |
| **UBS REAL ESTATE SECURITIES, INC.,** | § | |
| **WELLS FARGO BANK, N.A. D/B/A** | § | |
| **WELLS FARGO COMMERCIAL** | § | |
| **MORTGAGE SERVICING,** | § | |
| **AND RIALTO CAPITAL ADVISORS,** | | |
| **LLC** | | |
| *Defendant.* | | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND
REQUEST FOR DECLARATORY JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff J&R Multifamily Group, Ltd. *("J&R")*, files this Original Complaint against UBS Real Estate Securities, Inc. *("UBS")*, Wells Fargo Bank, N.A. d/b/a Wells Fargo Commercial Mortgage Servicing *("Wells Fargo")*, and Rialto Capital Advisors, LLC *("Rialto")*.

**I.
PARTIES**

1.   Plaintiff J&R Multifamily Group, Ltd. is a domestic limited partnership incorporated under the laws of the State of Texas, with its principal place of business in Houston, Texas.

2.   Defendant UBS Real Estate Securities, Inc., as trustee for the registered holders of UBS-Barclays Commercial Mortgage Trust 2012-C4, Commercial Mortgage Pass-Through Certificates, Series 2012-C4, is a New York corporation incorporated under the laws of the State of Delaware, with its principal place of business in New York City, New York. Defendant UBS does business in the State of Texas.  UBS may be served through its registered agent,

1

Corporation Service Company dba CSC - Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

3. Defendant Wells Fargo Bank N.A. d/b/a Wells Fargo Commercial Mortgage Servicing is a national banking organization doing business in Texas and having an address of 420 Montgomery St., San Francisco, CA 94104. Defendant Wells Fargo does business in the State of Texas. Wells Fargo may be served by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 701 Brazos Street, Ste. 1050, Austin, Texas 78701, or 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136, or wherever it may be found.

4. Defendant Rialto Capital Advisors, LLC is Florida limited liability company, incorporated under the laws of the State of Delaware, with its principal place of business in Miami, Florida. Rialto may be served through its registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136 or wherever it may be found.

## II.
### JURISDICTION AND VENUE

5. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this suit occurred in this Judicial District and because a substantial part of the property that is the subject of this action is situated in this Judicial District.

6. This Court has jurisdiction under 28 U.S.C. § 1332 due to diversity of citizenship of the parties. The matter in controversy exceeds $75,000.00, exclusive of interests and costs.

## III.
### FACTS

7. This is an action for tortious interference with existing and prospective business relations and fraud by Defendants for utilizing unsubstantiated "Defaults" under the loan

agreements to leverage Plaintiff to pay "Default Interest" before allowing Plaintiff to pay off a loan. Plaintiff seeks a declaratory judgment that it is not in default under the loan documents and also seeks damages for Defendants' wrongful conduct that prevented Plaintiff from selling the property.

8.  In May 2010, J&R, acquired Worthington on the Beltway *(the "Worthington Property")*, an apartment complex located at 1350 Greens Parkway, Houston, Harris County, Texas 77067. In November 2012, J&R determined to re-finance the acquisition and, accordingly, entered into a Deed of Trust, Assignment of Leases and Rents, and Security Agreement *("the Loan Documents")* on the Worthington property with UBS. The original principal amount of the Loan was $7,185,000. Since executing the Loan Documents, J&R has timely made all payments on the Loan. The loan was then securitized as a part of a larger loan package under UBS-Barclays Commercial Mortgage Trust 2012-C4, Commercial Mortgage Pass-Through Certificates, Series 2012-C4. The Prospectus of the Commercial Mortgage Pass-Through Certificates names Wells Fargo Bank N.A. as the master servicer and Rialto Capital Advisors as the special servicer of all loans within the package.[1]

### A. UBS and Wells Fargo Fail to Pay for Insurance Required Under the Loan Causing Damage to J&R

9.  When J&R refinanced the Worthington property with UBS, UBS required J&R to increase its existing insurance coverage from $5,000,000 to $17,160,000. UBS engaged Harbor, an insurance review company, to review the policies and supervise the increase. UBS required the policy to be paid at closing. More than $80,000 was escrowed at the time of closing to meet UBS's requirements for insurance, as required by Section 3.3 of the Loan Documents:

---

[1] **The full prospectus is available online at https://www.sec.gov/Archives/edgar/data/1559450/000153949712000755/fwp.htm**

> Section 3.3 INSURANCE: Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

10. J&R complied with all of UBS's requests and made monthly payments which included reserves for insurance. However, due to Wells Fargo, the Master Servicer, and UBS's failure to use the funds withheld at closing to procure the insurance, the insurance limits were never increased and the new $17.6 million policy was never issued.

11. On March 4, 2013, a fire occurred at the Worthington Property, damaging several units. Because J&R was, through no fault of its own, only insured at a $500,000 per building limit, J&R's repair process was substantially impaired by a lack of insurance funds payable under the old policy which would not have occurred but for UBS and Wells Fargo's failure to ensure the insurance limits were increased per UBS's requirements and per the funds paid by J&R. The total damage caused were in excess of $3,000,000.

12. Although the Worthington Property was underinsured as a result of UBS and Wells Fargo's inactions, J&R began the repair process for the individual units, installed new pitched roofs on the fire-damaged buildings, and repaired all exterior damage.

13. In 2015, while the damaged units were still under repair, the units were vandalized—all the copper wiring was cut and the air conditioning pipes were cut and stolen. As a result of the vandalism, J&R filed a claim with its insurance company, which was denied.

14. J&R timely notified Wells Fargo of the fire and vandalism losses. Between 2013 and 2016, Wells Fargo and J&R maintained regular communication on the status of the loss, building repairs, and builder's risk insurance. In addition, Wells Fargo conducted annual inspections of the Worthington property. Although some repairs to individual units have been delayed, the Worthington property is performing well above the required debt service coverage

ratio and J&R has timely made all payments. Wells Fargo and UBS did not assert a default at any time during this process.

### B. Rialto Improperly Asserts Defaults Years Later, and Inflates Payoff Amounts to Prevent J&R from Selling the Worthington Property

15. On February 9, 2017, Rialto, took over "certain aspects of the servicing responsibilities" for the loan, allegedly as a result of "certain events transpiring with regard to the Loan." Rialto is a well-known predatory "Special Servicer" who, as a business practice, looks to place properties in default so that it can collect "Default Interest," foreclose on the property, and buy the property at a discount using its purported "Default Interest" as part of the credit bid. Rialto and its counsel initially made contact directly with J&R via telephone making harsh allegations that Lender and its representatives would take severe measures to punish any resistance to their claims. J&R was then forced to engage legal counsel to protect its rights.

16. In a letter dated March 23, 2017, Rialto provided "notice" of "default" to J&R under the Loan Documents. Rialto has repeatedly alleged, contrary to the rights under the Loan Documents, that J&R is in default for failure to provide certain documents and information, and for failure to complete repair and remediation work that would be impossible to complete in the time frame demanded by Rialto and about which J&R was in regular communication with UBS and Wells Fargo, who never indicated any displeasure with the repair process. Nevertheless, J&R has offered to repair the property since first learning of this demand and has repeatedly sought detail and approval of proposed construction to no avail.

17. On April 23, 2017, J&R obtained insurance on the Worthington Property. Per the Loan Documents, J&R submitted the invoice for the policy to Rialto. However, Rialto failed to timely pay the policy. Consequently, the insurance company notified J&R that the policy would

5

be canceled—and the Worthington Property would be uninsured—if payment were not received by May 22, 2017.

18. Under the guise of its assertions of default, while still not responding to the insurance payment request, Rialto threatened to foreclose on the Worthington Property, accelerate the amount due under the Loan Documents, institute legal proceedings, and take any further action allowable if its demands were not met. Instead of fighting with Rialto over these unsubstantiated allegations, J&R determined that it would sell the property and pay off the loan.

19. Shortly thereafter, J&R engaged a national brokerage firm to sell the property. The brokerage firm expended a tremendous amount of time and resources and connected with buyers who were ready and willing to buy the Worthington Property. Both J&R and the prospective buyers were eager to close the deal. In order to do so, J&R requested the final Loan payoff amount from Rialto.

20. In a letter dated May 3, 2017, J&R notified Rialto of its intent to prepay all of the Debt as calculated under Section 2.4.3 of the Loan Agreement. J&R requested Rialto to provide a calculation of the amount due so that payment could be made. In a letter dated May 12, 2017, with its sale still pending, J&R re-urged its request after Rialto failed to send a calculation of the amounts owed.

21. In a letter dated May 17, 2017, after two essential weeks of waiting, Rialto finally provided J&R a Past Due Statement of Account, detailing the amount following amounts required to pay off the loan in full:

| | |
|---|---:|
| Principal Balance | $ 6,684,572.35 |
| Interest (04/11/2017 through 06/10/2017) | $ 53,552.34 |
| Default Interest (01/01/2013 through 02/01/2017) | $ 1,442,024.53 |
| Late Fees Due | $ 3,388.15 |
| Default Interest (04/05/2017 through 05/14/2017) | $ 37,137.92 |
| Property Protection Advances/Legal Expenses | $ 54,532.69 |
| Estimated Prepayment Compensation / Yield Maintenance | $ 916,572.84 |
| Payoff Processing Fee | $ 1,000.00 |
| **Sub-Total** | **$ 9,192,780.82** |

LESS:

| | |
|---|---:|
| Suspense Balance | $ 67,763.02 |
| Tax Balance | $ 129,210.71 |
| Insurance Balance | $ 138,058.98 |
| Reserve Balance | $ 178,434.63 |
| **Total** | **$ 8,679,313.48** |

(1) Current Note interest per diem is $ 877.9072
(2) Current Default interest per diem is $ 928.4128
(3) Legal expenses noted above are only those incurred thru 4/30/17 and will be updated at payoff
(4) There may have been a substantial insurance premium withdrawal that was after May 15, 2017 for the purpose of paying a property insurance premium

22. Much to J&R's surprise and dismay, Rialto attempted to defraud J&R and claimed for the first time more than $1.4 million in "default interest"—allegedly accruing since 2013—even though neither Wells Fargo, nor UBS, nor any other entity associated with the Loan Documents except Rialto ever attempted to assert a default during the four years of regular communication between the parties preceding Rialto's involvement. Further, Rialto failed, for months, to provide J&R with monthly account statements before asserting a default  This action

7

caused J&R to stop all sale efforts of the property. Rialto continues to fail to provide monthly statements.

23. Rialto also alleges a $6.68 million principal balance, which reflects an improper application of payments, as the balance of the loan equates to approximately $5.8 million. Rialto has misappropriated funds for uses other than those strictly applicable to the loan.

24. J&R attempted to negotiate a lawful and proper payoff amount in good faith, but its efforts were uniformly rejected at every turn by Rialto. These baseless allegations led to J&R being unable to consummate the sale transaction and the sale was lost. As a result of Rialto's baseless and fraudulent default assertions, J&R has suffered and continues to suffer.

## IV.
### CAUSES OF ACTION

25. All previous paragraphs are incorporated herein by reference.

### Count I: Declaratory Judgment—J&R is Not in Default under the Loan Documents

26. A dispute has arisen with respect to J&R's "Default" status under the Loan Documents. Under the terms of the Loan Documents, no "Event of Default" has occurred.

27. To the extent Defendants wish to allege an Event of Default, any such allegation is substantiated solely by its failure to obtain sufficient insurance on the Worthington Property as agreed to by J&R with the funds escrowed and under UBS and Wells Fargo's sole control.

28. Because no Event of Default has occurred, or alternatively, such Event of Default was excused by Defendants' actions, as discussed above, J&R respectfully requests the Court declare that J&R is not in default and that no "Default Interest" is owed.

29. Moreover, Defendants have made veiled threats to attempt to foreclose on the property despite J&R continuing to make all payments owed. Should Defendants follow through and attempt such recourse, J&R will need immediate declaratory and injunctive relief.

**Count II: Tortious Interference with Existing and Prospective Business Relations**

30. Defendants tortiously interfered with the prospective sale of the Worthington Property by fraudulently asserting years of default interest accrual and mishandling prior payment calculations on the principal balance of the Loan with knowledge that a time-sensitive sale of the Worthington Property was in process. Defendants intentionally and maliciously interfered with J&R's existing business relationship, as well as prospective relationships concerning the Worthington Property. The formation of the May 2017 contract of sale was reasonably probable, considering all the facts and circumstances related to the transaction. As a direct and proximate result of Defendants' fraudulent assertions of default and mishandling of prior payments, J&R lost its sale in May 2017. J&R continues to be injured by its inability to sell the Worthington Property with severely inflated payoff amounts. J&R has also lost the opportunity to reinvest these proceeds in additional business ventures resulting in more lost opportunities.

**Count III: Fraud**

31. Defendants intentionally and knowingly made direct material misrepresentations about J&R's default status and the inflated payoff amounts occasioned by Defendants' fraudulent assertion of default. Defendants intentionally and knowingly failed to disclose such misrepresentations while simultaneously accepting payments from J&R that were not properly applied under the terms of the Loan Documents. Defendants knew these representations were false at the time they were made and intended to induce J&R to rely on such misrepresentations in an effort to squeeze as much money from J&R as possible. J&R was unable to sell the Worthington Property as a direct result of Defendants' misrepresentations. Defendants' fraudulent conduct caused J&R to sustain damages.

**Exemplary Damages**

32. The acts of Defendants as described above were intentional, willful, and malicious, as defined by TEX. CIV. PRAC. & REM. CODE § 41.001, *et. seq.* In fact, upon information and belief, Defendants knew such representations regarding amounts owed under the Loan Documents were unsubstantiated, but asserted them anyway as part of a regular business practice to extort payments in excess of those owed. J&R is therefore entitled to exemplary damages, which the jury may award over and above J&R's actual damages, in an amount that will adequately punish Defendants and serve as a deterrent to others.

**V.**
**JURY DEMAND**

33. J&R demands a trial by jury and tenders the appropriate fee.

**VI.**
**REQUESTED RELIEF**

For these reasons, J&R Multifamily Group, Ltd. asks that Defendants be cited to appear and answer and that J&R have judgment against Defendants for the following:

a. A declaration that J&R is not in default under the Loan Documents;

b. Actual and consequential damages;

c. Exemplary damages as allowed by law;

d. All lawful pre-judgment and post-judgment interest on the foregoing amounts at the highest rate allowed by the laws of the State of Texas;

e. All costs incurred in connection with the lawsuit; and

f. All additional and further relief, general and special, at law or in equity, to which J&R Multifamily Group, Ltd. may show itself justly entitled.

        Respectfully submitted,

        CHAMBERLAIN, HRDLICKA, WHITE,
          WILLIAMS & AUGHTRY, P.C.

By:   */s/ Christine Kirchner*
       Christine Kirchner
       State Bar No. 00784403
       c.kirchner@chamberlainlaw.com
       Jeff C. Wigginton
       State Bar No. 24057521
       jeff.wigginton@chamberlainlaw.com
       1200 Smith Street, Suite 1400
       Houston, Texas 77002
       Phone:  (713) 658-1818
       Fax:  (713) 658-2553

       **ATTORNEYS FOR PLAINTIFF**
       **J&R MULTIFAMILY GROUP, LTD.**

2622419.1
170780.000000