```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
J&R MULTIFAMILY GROUP, LTD.,

                        Plaintiff,                              19-cv-1878 (PKC)

        -against-                                               OPINION
                                                                AND ORDER

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE REGISTERED HOLDERS
OF UBS-BARCLAYS COMMERCIAL
MORTGAGE TRUST 2012-C4, COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2012-C4, WELLS
FARGO BANK, NATIONAL ASSOCIATION
D/B/A WELLS FARGO COMMERCIAL
MORTGAGE SERVICING, AND RIALTO
CAPITAL ADVISORS, LLC,

                        Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

Plaintiff J&R Multifamily Group, Ltd. ("J&R") brings this action against U.S. Bank, National Association, as Trustee for the registered holders of UBS-Barclays Commercial Mortgage Trust 2012-C4, Commercial Mortgage Pass-Through Certificates, Series 2012-C4 ("U.S. Bank"), Wells Fargo Bank, National Association d/b/a Wells Fargo Commercial Mortgage Servicing ("Wells Fargo"), and Rialto Capital Advisors, LLC ("Rialto"). J&R invokes diversity jurisdiction to allege that defendants tortiously interfered with the prospective sale of and committed fraud related to a mortgaged Houston, Texas apartment complex. The case was transferred from the Southern District of Texas to this Court pursuant to a mandatory forum selection clause contained within the underlying loan agreement. Defendants now move to dismiss

the Fourth Amended Complaint ("FAC"), (Doc. 79), for failure to state a claim. Rule 12(b)(6), Fed. R. Civ. P. For the reasons that follow, defendants' motion to dismiss is granted.

BACKGROUND

In November 2012, J&R refinanced its Houston, Texas apartment complex, named Worthington on the Beltway ("Worthington"), by means of a $7,185,000 loan from UBS Real Estate Securities Inc. (FAC ¶ 8). This loan was subsequently securitized as part of UBS-Barclays Commercial Mortgage Trust 2012-C4, Commercial Mortgage Pass-Through Certificates, Series 2012-C4, for which U.S. Bank was designated trustee, Wells Fargo was designated master servicer, and Rialto was designated special servicer. (FAC ¶ 8). The relevant documentation permitted any of defendants to handle loan servicing duties and exercise all rights of UBS. (FAC ¶ 8). J&R alleges that Wells Fargo and Rialto were the primary points of contact throughout the life of the loan and acted on behalf of U.S. Bank. (FAC ¶ 9).

On March 4, 2013, a fire damaged several apartments at Worthington. (FAC ¶ 15). By early 2017, Rialto took over the servicing of the Worthington loan from Wells Fargo. (FAC ¶¶ 26, 28). On March 23, 2017, Rialto asserted that J&R was in default for "failure to provide certain documents and information, and for failure to complete repair and remediation work." (FAC ¶ 28). J&R states that it has finished the restoration of damaged apartments, (FAC ¶ 29), made all its payments under the loan on time, (FAC ¶ 8), received no prior notice of default, (FAC ¶ 34), and that defendants' assertion of default was fraudulent, (FAC ¶ 41).

After receiving this notice of default from Rialto, J&R engaged a broker to sell Worthington and, by May 12, 2017, had received "formal letters of intent to purchase" from five potential buyers. (FAC ¶ 31). In preparation for closing a potential transaction, J&R had requested a payoff statement for the loan from Rialto on May 3, 2017. (FAC ¶ 32). On May 17, 2017, Rialto

provided the requested payoff statement, which detailed, for the first time, more than $1.4 million in "default interest," accrued in the period from January 1, 2013 to February 1, 2017. (FAC ¶¶ 33–34). J&R states that, from 2013 to 2016, it had received monthly statements from defendants which indicated a "default interest" balance of "$0.00." (FAC ¶ 34). J&R alleges that Rialto's demand for over $1.4 million in improperly accrued "default interest" prevented J&R from consummating a sale of Worthington to one of the prospective buyers because the payment of this charge to facilitate a deal would "concede" the propriety of the allegedly fraudulent demand. (FAC ¶ 36).

In this action, J&R alleges that defendants tortiously interfered with prospective business relationships by intentionally issuing a payoff statement with improperly accrued "default interest" as a means of preventing J&R's sale of Worthington to interested buyers. (FAC ¶¶ 40–41). J&R alleges that Rialto intended to block a sale of Worthington to outside investors in order to effectuate an equity stripping plan that would allow it to take ownership of Worthington at a greatly reduced cost. (FAC ¶ 27). J&R also alleges that defendants committed fraud either through the monthly statements, which had indicated no "default interest" balance, or through the payoff statement, which asserted a "default interest" balance of over $1.4 million. (FAC ¶¶ 43–44). J&R requests damages as well as a declaration that it is not in default on the loan. (FAC at 18).

RULE 12(b)(6) STANDARD

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the

presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations, which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 678–79.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).  A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule."  Id.  A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (first alteration in original) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION

I. New York Choice-of-Law Rules Govern, Dictating the Application of New York Substantive Law to Plaintiff's Fraud Claim and Texas Substantive Law to Plaintiff's Tortious Interference with Prospective Business Relations Claim.

   A. New York Choice-of-Law Rules Govern Plaintiff's Claims.

Ordinarily, a federal court sitting in diversity utilizes the choice-of-law rules of the state in which it is located.  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 65 (2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 494–96 (1941)).

An exception to this standard mandates that a transferee court use the choice-of-law rules of the transferor court's state following a change of venue effected under section 1404(a). Id. However, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." Id. at 64. In such cases, the choice-of-law rules of the transferee court's state apply. Id. at 65–66.

Judge Gilmore of the Southern District of Texas transferred the instant case to the Southern District of New York after finding that the loan agreement contained "a valid mandatory forum-selection clause," the existence and validity of which was not disputed by either side. (Order, J&R Multifamily Grp., Ltd. v. UBS Real Estate Sec., Inc., No. 18-cv-375 (S.D. Tex. Feb. 21, 2019) (Doc. 36 at 6, 9)). Following such a section 1404(a) transfer effected pursuant to a valid mandatory forum selection clause, this Court does not give any weight to plaintiff's initially selected venue and instead applies the choice-of-law rules of the state in which it sits, New York.

B. The Loan Agreement's Choice-of-Law Provision Does Not Encompass Plaintiff's Tort Claims.

In addition to a forum selection clause, contracts often also contain a choice-of-law clause (or governing law provision), which mandates the substantive law of a particular state as controlling over potential disputes. Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 335 (2d Cir. 2005). "New York law gives full effect to parties' choice-of-law provisions . . . ." Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996). Indeed, New York has legislated that contractual counterparties "may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2019); see also IRB-Brasil Resseguros, S.A. v. Inepar Investments, S.A., 20 N.Y.3d 310, 315–16 (2012). As such,

New York law requires the application of the law of a contractually agreed upon state, even in some instances in which the specified law is unrelated to the contract, to any claim falling within the scope of a valid choice-of-law provision. Id.; see also Ministers & Missionaries Benefit Bd. v. Snow, 26 N.Y.3d 466, 470 (2015) ("In a case based on New York law, the United States Supreme Court held that a choice-of-law provision in a contract 'may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.'" (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59 (1995)).

In the present action, neither party disputes the existence or validity of the loan agreement's choice-of-law provision. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss Fourth Am. Compl. at 3–4 (Doc. 87 at 3–5)); (Pl.'s Mem. of Law in Supp. of Resp. to Defs.' Mot. to Dismiss Fourth Am. Compl. at 5–6 (Doc. 89 at 5–6)). Instead, the parties differ as to whether this provision covers plaintiff's claims of tortious interference with prospective business relations and fraud.[1] Specifically, while disagreeing on its scope, the parties concur that section 11.3(a) of the loan agreement contains the choice of law provision, which reads in relevant and substantial part:

> THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS

---

[1] Neither party disputes that plaintiff's claims sound in tort. (Doc. 87 at 4); (Doc. 89 at 7).

> OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, . . . . TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS, AND THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(Doc. 87-1 § 11.3(a)).[2] Relying on Texas choice-of-law rules, plaintiff argues that its claims fall outside the scope of this provision, while defendants argue that, under New York choice-of-law rules, this provision encompasses plaintiff's claims. Neither party is completely correct.

As established above, New York choice-of-law rules apply in this case and therefore govern the scope of section 11.3(a) of the loan agreement. Regarding the scope of such choice-of-law provisions, the Second Circuit noted "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." Fin. One Pub. Co., 414 F.3d at 334. "Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract . . . ." Id. at 335; see also ABB, Inc. v. Havtech, LLC, No. 650277/2018, 2019 WL 160415, at *3 (N.Y. Sup. Ct., N.Y. Cty., Jan. 10, 2019) (stating that "non-contractual, tort claims generally fall outside the scope of contractual choice of law provisions" (citing J.A.O. Acquisition Corp. v. Stavitsky, 745 N.Y.S.2d 634, 638–39 (N.Y. Sup. Ct., N.Y. Cty., 2001), aff'd,

---

[2] The Court may properly rely upon the loan agreement as a document incorporated into the Fourth Amended Complaint by reference as well as a document upon which plaintiff relied when formulating the Fourth Amended Complaint. Stratte-McClure, 776 F.3d at 100.

293 A.D.2d 323 (1st Dep't 2002))). For "a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." Krock, 97 F.3d at 645 (quoting Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 309–10 (2d Cir. 1994)).

Section 11.3(a) of the loan agreement is not "sufficiently broad" as to encompass tort claims. In relevant part, it encompasses "matters of construction, validity, and performance" of the loan agreement. (Doc. 87-1 § 11.3(a)). Such contractual language is insufficiently broad to bring a tort claim within the scope of the choice-of-law provision. See, e.g., Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC, No. 17-cv-8987 (GHW), 2019 WL 1244294, at *15–16 (S.D.N.Y. Mar. 18, 2019) (holding that choice-of-law provisions, which require contracts "in all respects be interpreted, enforced, and governed" and "be governed by and construed in accordance with the laws" of a particular state, did not "cover tort claims"); McBeth v. Porges, 171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016) (holding that the choice-of-law provisions at issue did not cover tort claims because "the provisions do not encompass the entire relationship between the contracting parties and are comparable to provisions that courts have held not to encompass such tort claims" (internal quotation marks omitted) (citing Frontline Processing Corp. v. Merrick Bank Corp., No. 13-cv-3956 (RPP), 2014 WL 837050, at *8 n.4 (S.D.N.Y. Mar. 3, 2014) and Twinlab Corp. v. Paulson, 283 A.D.2d 570, 571 (2d Dep't 2001))).

Further, the differing language utilized in the forum selection clause and the choice-of-law clause illustrates a divergence in the two provisions' scopes. The loan agreement's forum selection clause requires "any legal suit, action or proceeding . . . arising out of or relating to this agreement" to be brought in New York. (Doc. 87-1 § 11.3(b)). In contrast, the choice-of-law clause provides that "matters of construction, validity and performance . . . shall be governed by,

and construed in accordance with" New York law. (Doc. 87-1 § 11.3(a)). The forum selection clause's language, "any legal suit" is sufficiently broad to encompass tort claims, as evidenced by Judge Gilmore's transfer of plaintiff's tort claims to this District. The loan agreement drafters' decision to utilize different, narrower language in the choice-of-law provision reflects an intended distinction. The drafters were capable of writing a choice-of-law provision sufficiently broad to cover torts by mimicking the adjacent forum selection clause, but chose not to do so. The language of the loan agreement's choice-of-law provision does not encompass plaintiff's tort claims. Fin. One Pub. Co., 414 F.3d at 335 ("Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause. Presumably a contractual choice-of-law clause could be drafted broadly enough to reach such tort claims." (internal citations omitted)).

Defendants' argument to the contrary is unavailing. The single case defendants cite, Capital Z Fin. Servs. Fund II, L.P. v. Health Net, Inc., 43 A.D.3d 100 (1st Dep't 2007), is the rare case to find that tort claims fell within the scope of a contractual choice-of-law provision. Fin. One Pub. Co., 414 F.3d at 335 ("However, no reported New York cases present such a broad clause."); Tropical Sails Corp. v. Yext, Inc., No. 14-cv-7582 (JFK), 2017 WL 1048086, at *12 (S.D.N.Y. Mar. 17, 2017) (stating that "at least one subsequent [to Finance One] reported case has found a clause broad enough to encompass tort claims" and citing Capital Z). To support its finding, the Capital Z court cited Tutur, 26 F.3d at 309–10, which it described as "applying [a] New York choice of law provision to [a] tort claim." Capital Z, 43 A.D.3d at 109. However, "the court in Turtur did not apply New York law to determine the scope of the contractual choice-of-law clause at issue in that case, it applied Texas law," meaning that, "[a]s authority for New York

law, therefore, Turtur is irrelevant." Fin. One Pub. Co., 414 F.3d at 333–34; see also Tropical Sails Corp., 2017 WL 1048086, at *12 (stating that "the Capital Z court's reasoning has been questioned based in part on its reliance on Turtur v. Rothschild Registry Int'l, Inc., which applied Texas choice-of-law rules to a contract" (internal citation omitted)). Defendants' citation to Capital Z does not withstand the full weight of the case law on this issue and does not support the proposition that section 11.3(a) of the loan agreement encompasses tort claims.

In conclusion, plaintiff's tort claims do not fall within the scope of the loan agreement's choice-of-law provision.

    C. New York Substantive Law Applies to Plaintiff's Fraud Claim and Texas Substantive Law Applies to Plaintiff's Tortious Interference with Prospective Business Relations Claim.

As the loan agreement's mandatory choice-of-law provision does not apply to plaintiff's claims, the Court applies New York's choice-of-law rules to determine the applicable state law. Plaintiff argues that Texas law should apply to its claims, (Doc. 89 at 2), while defendants argue for New York law, (Doc. 87 at 3).

The first step of New York's choice-of-law analysis is "to determine whether there is an actual conflict between the laws of the jurisdictions involved." Tropical Sails Corp., 2017 WL 1048086, at *5 (quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 223 (1993)). This "choice of law analysis is generally done separately for each claim and defense, under a doctrine called dépeçage." 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co., 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015); see also Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 397 n.1 (2d Cir. 2001) ("Under the doctrine of depecage as applied by New York courts, 'the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues.'" (quoting Hutner v. Greene, 734 F.2d 896, 901 (2d Cir. 1984))). If the relevant states' laws do not conflict, New York will apply its own law.

Wall v. CSX Transp., Inc., 471 F.3d 410, 422 (2d Cir. 2006) (citing Excess Ins. Co. Ltd. v. Factory Mutual Ins. Co., 2 A.D.3d 150, 151 (1st Dep't 2003)). If there is a conflict between states' law as to a tort claim, New York will then apply interest analysis, which "intend[s] to give controlling effect to the law of the jurisdiction [that], because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Fin. One Pub. Co., 414 F.3d at 336–37 (quoting Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (1993)). Often, this results in the application of the law of the plaintiff's place of injury or location. See Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 89 F. App'x 287, 288 (2d Cir. 2004) (citing Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973) (Friendly, J.)).

In this case, the plaintiff alleges fraud and tortious interference with prospective business relationships. For plaintiff's fraud claim, there is no need to conduct an interest analysis "[b]ecause common law fraud under Texas and New York law are substantively identical." Meeker v. McLaughlin, No. 17-cv-5673 (SN), 2018 WL 3410014, at *7 (S.D.N.Y. July 13, 2018) (collecting cases). As such, New York law will apply to plaintiff's fraud claim.

To determine the correct law to apply to plaintiff's claim of tortious interference with prospective business relations, the Court will apply an interest analysis because Texas and New York law conflict as to the elements of this tort. Under New York law, the elements for a claim of tortious interference with business relations are that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). Under Texas law, "[t]he elements of tortious interference with a prospective business relationship are 'that (1) there was a reasonable probability that the plaintiff

- 11 -

would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.'" D'Onofrio v. Vacation Publications, Inc., 888 F.3d 197, 214 (5th Cir. 2018) (quoting Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013)).

"To be an 'actual conflict,' the difference between the laws of the two jurisdictions need not be outcome-determinative, but must provide differing substantive rules that are relevant to the matter at hand, and the difference must have a significant possible effect on the outcome of the trial." 2002 Lawrence R. Buchalter Alaska Tr., 96 F. Supp. 3d at 228–29. As part of a claim of tortious interference with prospective business relations, New York requires a showing of "but for" causation, which "demands a showing that plaintiff 'would have received' the prospective contract or entered into the prospective business relationship if defendant had not interfered." N.Y. Pattern Jury Instructions 3:57 (Comment) (2018); see also Zetes v. Stephens, 108 A.D.3d 1014, 1020 (4th Dep't 2013) ("As relevant here, a plaintiff is required to identify a specific customer that the plaintiff would have obtained 'but for' the defendant's wrongful conduct." (citing Parrott v. Logos Capital Mgmt., LLC, 91 A.D.3d 488, 489 (1st Dep't 2012))). This "but for" standing is "more stringent than a 'reasonably certain' or 'reasonable expectation' test." N.Y. Pattern Jury Instructions 3:57 (Comment). In contrast, Texas requires only "a reasonable probability that the plaintiff would have entered into a business relationship with a third party." D'Onofrio, 888 F.3d at 214; see also 1 Tex. Prac. Guide Torts § 1:265 (2019) ("A plaintiff seeking to establish a cause of action for tortious interference with a prospective business relationship does not need to prove

that the contract would have certainly been made but for the interference. Rather, the making of the contract must be reasonably probable, considering all of the facts and circumstances attendant, to the transaction."). This differing causation requirement represents an "actual conflict."

As discussed, New York's interest analysis requires the application of the law of the state with the greatest interest in the litigation. For conduct regulating torts, such as tortious interference with a prospective business relationship, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." 2002 Lawrence R. Buchalter Alaska Tr., 96 F. Supp. 3d at 217 (quoting In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013)). As "[a] tort occurs in the place where the injury was inflicted, which is generally where the plaintiffs are located," id. (quoting Lyman Commerce Sols., Inc. v. Lung, No. 12-cv-4398, 2013 WL 4734898, at *4 (S.D.N.Y. Aug. 30, 2013)), Texas law, as the law of the plaintiff's domicile, will apply to plaintiff's claim of tortious interference with a prospective business relationship.

New York substantive law will apply to plaintiff's fraud claim and Texas substantive law to plaintiff's claim of tortious interference with prospective business relations.

II. <u>Defendants' Motion to Dismiss Plaintiff's Claim of Fraud Is Granted</u>.

Under New York law, the elements of fraud are: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 170 (2d Cir. 2015). Under the heightened pleading standard of Rule 9(b), Fed. R. Civ. P., fraud claims must be pled with particularity, which requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir. 1994)). Further, a plaintiff must allege facts giving rise to a "strong inference of fraudulent intent," Loreley Fin., 797 F.3d at 176, which is shown by either alleging a "motive and opportunity to commit fraud, or . . . by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir. 2006) (quoting Shields, 25 F.3d at 1128).

As to the fraud claim, the Fourth Amended Complaint is not a model of clarity. Plaintiff attempts to advance to two alternative theories of fraud, one based on the payoff statement and the other based on the prior monthly statements.[3] (FAC ¶¶ 43–44 (alleging defendants "either (1) knew the monthly statements were false at the time they were made; or (2) knew these representations of default were false at the time they were made"). First, plaintiff alleges that the payoff statement issued by defendants included over $1.4 million in improperly accrued default interest, which prevented plaintiff from completing a potential sale of Worthington. (FAC ¶¶ 36, 41). Alternatively, plaintiff alleges that the monthly statements from 2013 to 2016 improperly indicated that plaintiff owed nothing in default interest over that period. (FAC ¶ 43). Plaintiff alleges that, had it known of its default interest liability during this period, it would have attempted to sell Worthington at a much earlier date. (FAC ¶ 44). Defendants argue that plaintiff has failed to adequately allege that it justifiably relied on any statement made by defendants. (Doc. 87 at 13–17). The Court agrees and defendant's motion to dismiss the claim will be granted.

---

[3] Though plaintiff pleads alternative theories of fraud, these theories are not, as defendants claim, "hopelessly contradictory" or "diametrically opposed," (Doc. 91 at 7–8), and so will not be dismissed for that reason. The facts of the lone case cited by defendants in support of this argument are not comparable to the instant case. See Barberan v. Nationpoint, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010) (dismissing a breach of contract claim in which plaintiff asserted both that defendants failed to provide a loan as required and that plaintiff had been current with its payments on that same loan).

A.  Plaintiff Fails to Adequately Plead Reliance for Its Payoff Statement Theory of Fraud.

For its theory of fraud based on the allegedly fraudulent payoff statement, plaintiff satisfies the first three elements of fraud, but fails to adequately plead reliance. Specifically, the Fourth Amended Complaint alleges that, on May 17, 2017, defendant Rialto provided a payoff statement in response to a May 3, 2017 request from plaintiff. (FAC ¶¶ 32–33). This payoff statement asserted that, during the period from January 2013 to February 2017, plaintiff had accrued and now owed over $1.4 million in default interest. (FAC ¶¶ 33–34). Plaintiff also alleges that Rialto knew that the asserted amount of default interest was not properly accrued and therefore was not an accurate assessment of the amount of such interest owed by plaintiff. (FAC ¶¶ 33–34). Further, plaintiff adequately pleads scienter. The allegation that Rialto attempted to extract profits in excess of its contractual allotment through equity stripping qualifies as either motive and opportunity to commit fraud or evidence of conscious misbehavior. (FAC ¶¶ 27, 41). These allegations satisfy Rule 9(b)'s particularity requirement for the first three elements of a fraud claim.

The fourth element of a fraud claim requires a plaintiff to plead justified reliance on the material misrepresentation at issue. Loreley Fin., 797 F.3d at 170. Plaintiff must be justified in its belief in the truth of the statement. Plaintiff cannot claim reliance if it acted upon a statement which it knew to be false. Sazerac Co. v. Falk, 861 F. Supp. 253, 260 (S.D.N.Y. 1994) ("In order to state a claim in fraud, [plaintiff] 'must not only reasonably believe that the representation is true, but he must also be justified in taking action in reliance thereon.'" (quoting Lanzi v. Brooks, 54 A.D.2d 1057, 1058 (3d Dep't 1976), aff'd, 43 N.Y.2d 778 (1977)); see also Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F.2d 997, 1009 (2d Cir. 1988) (reversing a finding of fraud on reliance grounds because plaintiff did not believe defendant's misrepresentations); N.Y. Pattern Jury Instructions 3.20 (Comment I.E.1). Plaintiff alleges that, based on the default interest asserted in the payoff statement, it terminated attempts to sell Worthington because this alleged debt made

the property impossible to profitably sell. (FAC ¶¶ 36, 41). However, plaintiff admits that, at the time, it did not believe this purported amount of default interest to be a true and accurate accounting of its obligations under the loan. (FAC ¶ 36; Doc. 89 at 18–19). Plaintiff did not believe defendants' representation in the payoff statement as to the amount of default interest owed to be true and therefore could not justifiably rely on that statement. Plaintiff cannot maintain a fraud claim on this theory.

  B. <u>Plaintiff Fails to Adequately Plead Its Monthly Statement Theory of Fraud</u>.

    Alternatively, plaintiff argues that, if the default interest asserted in the payoff statement was accurate, then defendants committed fraud with each monthly statement from 2013 to 2016 that asserted $0.00 in default interest. Plaintiff alleges that it relied on defendants' misrepresentations of plaintiff's good standing as to the loan and asserts that, had it been aware of its apparent default earlier, it "would have moved forward in a different manner and likely sold the Property much earlier." (FAC ¶ 44).

    Assuming that these allegedly fraudulent monthly statements satisfy the first three elements of fraud, plaintiff's claim still fails as plaintiff has not adequately pled reliance. Specifically, plaintiff points to two categories of actions allegedly undertaken or refrained from in reliance upon the monthly statements. First, plaintiff argues that it would have "likely sold" Worthington had it known the property was in default. (FAC ¶ 44). However, plaintiff's conclusory assertions that it relied on the monthly statements, (see, e.g., FAC ¶ 22 ("J&R relied upon these statements.")), are insufficient to adequately plead that the $0.00 in default interest listed on these statements was a factor in plaintiff's decision to retain Worthington and not pursue a sale. Second, plaintiff alleges that it incurred interest, reconstruction, maintenance and other costs connected to Worthington that it would not have incurred had it known about the default. (FAC ¶ 44). These allegations do not adequately plead reliance because the loan contractually

obliged plaintiff to bear such costs, regardless of the amount of default interest listed in the monthly statements. Dopp v. Franklin Nat'l Bank, 461 F.2d 873, 880 n.16 (2d Cir. 1972) ("One does not rely on a representation to his detriment, however, in performing a legal obligation."); Cont'l Grain Co. v. Meridien Int'l Bank, Ltd., 894 F. Supp. 654, 661 (S.D.N.Y. 1995) (stating that "a party 'cannot claim to have been defrauded into doing what it was already legally bound to do'" (quoting Megaris Furs, Inc. v. Gimbel Bros., Inc., 172 A.D.2d 209, 212 (1st Dep't 1991))).

* * *

Plaintiff has not adequately pled the required elements of a fraud claim on either theory advanced. Defendants' motion to dismiss the fraud claim will be granted.

III. Defendants' Motion to Dismiss Plaintiff's Claim of Tortious Interference with Prospective Business Relations Is Granted.

Plaintiff also claims that defendants' actions have tortiously interfered with its prospective business relations. Specifically, plaintiff alleges that defendants issued the payoff statement with an improperly accrued amount of default interest to sabotage plaintiff's sale of Worthington to one of five prospective investors and thereby preserve defendants' equity stripping scheme. (FAC ¶ 41). As plaintiff cannot adequately plead all elements of tortious interference with prospective business relations, defendants' motion to dismiss will be granted as to this claim.

As discussed, under Texas law, "[t]he elements of tortious interference with a prospective business relationship are 'that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.'" D'Onofrio, 888 F.3d at 214

(quoting Coinmach Corp., 417 S.W.3d at 923). "Establishing that defendant's conduct was independently tortious or wrongful does not require that the plaintiff be able to prove an independent tort. Rather, proof that the defendant's conduct would be actionable (as to someone) under a recognized tort is sufficient." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 750 (5th Cir. 2019) (internal citations omitted) (citing Wal–Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001)).

Here, plaintiff bases its claim of tortious interference on the allegedly fraudulent payoff statement. (FAC ¶ 41 ("As a direct and proximate result of Lenders' fraudulent assertions of default . . . , J&R lost the prospective purchasers of the Worthington.")). However, for the reasons stated above, plaintiff has failed to adequately plead that it was defrauded by defendants. Therefore, plaintiff cannot maintain a claim of tortious interference on this basis. See Walker, 938 F.3d at 751; Phoneternet, LLC v. LexisNexis Risk Sols., Inc., No. 18-cv-1719, 2019 WL 4748271, at *15 (N.D. Tex. Sept. 30, 2019)

The Fifth Circuit has sustained claims of tortious interference with prospective business relations based on a tort directed at a third party. Sanger Ins. Agency v. HUB Int'l, Ltd., 802 F.3d 732, 748 n.13 (5th Cir. 2015) ("Texas law actually permits plaintiffs to recover for tortious interference even when they would not have standing to assert the underlying tort."); see also Wal–Mart Stores, Inc., 52 S.W.3d at 726 ("[F]or example, a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded."). But plaintiff has not alleged that the prospective purchasers ever saw the payoff statement or saw or heard any other statement made by defendants. Because these prospective purchasers did not rely upon any of the alleged

misrepresentations, plaintiff has failed to allege an actionable tort on which to base its claim of tortious interference with prospective business relations.

Plaintiff cannot plead a required element of its tortious interference with prospective business relations claim, namely that of an independently tortious or unlawful act. Defendants' motion to dismiss this claim will be granted.

CONCLUSION

Defendants' motion to dismiss the Fourth Amended Complaint is GRANTED. The Clerk is directed to terminate this motion. (Doc. 86).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
December 5, 2019